UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LONNIE SNELLING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14CV431 CDP |
| | ) | |
| HSBC CARD SERVICES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMRANDUM AND ORDER</u>

*Pro se* plaintiff Lonnie Snelling sued HSBC Card Services, Inc. ("HSBC"),

its parent company HSBC Holdings plc ("HSBC Holdings"), and the Eastman

Kodak Company ("Kodak"), asserting a number of claims related to his purchase

of an inkjet printer with a Visa credit card.  The case was removed to federal court,

and it now comes before me on four motions.  First, Snelling asks that I remand the

case for lack of diversity jurisdiction.  The parties are diverse and Snelling has

alleged damages in excess of the $75,000 jurisdictional threshold when considering

his demand for punitive damages.  The motion will be denied.  Second, HSBC

moves that I dismiss the case.  I will grant the motion in part with prejudice as to

the counts for negligence and negligent infliction of emotional distress, because

Snelling has failed to establish any duty with respect to those causes of action.

Snelling also fails to plead his counts for fraud and for violation of the Missouri

Merchandising Practices Act with the level of particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. However, the interests of justice require that he be allowed the opportunity to amend his pleadings, and so those claims will be dismissed without prejudice. The motion will otherwise be denied. Third, I will grant HSBC's motion to strike, because Snelling failed to obtain pre-approval by the court before filing surreplies. Fourth, I will deny Snelling's motion for a finding that HSBC Holdings made an entry of general appearance. That entity only consented to removal and has made no further filings such that it should be deemed to have entered a general appearance in this case. Finally, Kodak is in bankruptcy and so all claims against that entity will be stayed until notice is given that the bankruptcy proceedings have concluded.

## I.    BACKGROUND[1]

Lonnie Snelling sued HSBC, HSBC Holdings, and Kodak in state court. Snelling alleges that "the HSBC defendants" purchased his Visa credit card contract sometime before 2007. Snelling states that "during television commercials in the 2007s," it was advertised that purchases made with a Visa card would receive an extended warranty of one year beyond that issued by the seller/manufacturer of the purchased goods. It was also advertised that a buyer

---

[1] The facts presented here are for purposes of this motion only and do not constitute findings of fact by this court or otherwise relieve any party of any burden in this case.

using a Visa credit card would be protected from fraud. Snelling alleges that the advertisements did not mention that the warranty and fraud protections would only apply if the purchases occurred within 100 miles of the purchaser's home.

Between 2007 and 2008, Snelling made several purchases using his Visa card and disputed the charges. On or about December 8, 2008, Snelling bought a Kodak printer by telephone with the Visa card and was unable to get the printer to operate. On January 2, 2009, he placed the printer for return delivery to Kodak. Seventeen days later, Snelling requested a form with which to dispute the charges on his Visa card related to the printer purchase, and submitted it to HSBC. HSBC declined to assist with the dispute, invoking the restriction against purchases obtained more than 100 miles from the purchaser's home. Snelling ultimately paid $319.34, including a $55.04 finance charge.

Snelling filed the action in state court, asserting three counts against the HSBC defendants jointly and severally: Count I asserts claims for fraudulent inducement to contract and fraudulent concealment of a material fact; Count II asserts a claim for negligent concealment of material facts; and Count III asserts a claim for "unlawful merchandising practices."[2] In each of these counts, Snelling seeks nominal, actual, consequential, and compensatory damages in excess of $5761, or $17,283 in total. He also requests punitive damages for each count.

_____

[2] Snelling also asserted counts individually against Kodak.

Snelling also asserts one count against the HSBC defendants and Kodak jointly and severally, Count VIII, for negligent infliction of emotional distress. Count VIII requests damages in excess of $12,761, in addition to punitive damages.

Because Kodak had not yet been served, HSBC removed the case to federal court without obtaining its consent.[3] The Notice of Removal in this case asserts that the Court has removal jurisdiction over the action pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332 because the lawsuit is between citizens of different States and the matter in controversy exceeds the sum of $75,000. The Notice alleges the citizenship of the parties: Snelling is a citizen of the State of Missouri; HSBC Holdings is a United Kingdom corporation; HSBC is organized under the laws of Delaware and maintains its principal place of business in Illinois; and Kodak is organized under the laws of New Jersey and maintains its principal place of business in New York. The Notice further states that HSBC is registered with the Missouri Secretary of State's office to conduct business in Missouri.

Snelling has filed a motion to remand this case to state court on two grounds. First, Snelling argues that HSBC is a Missouri corporation, because it is registered in that state, and therefore the parties are not diverse. Second, Snelling argues that the amount in controversy is less than the jurisdictional threshold. HSBC contends

---

[3] HSBC Holdings, although not served in this case, consented to the removal through shared counsel.

that Snelling's motion to remand should be denied because it is noncompliant with a local rule requiring that each motion be accompanied by a memorandum in support thereof. It also argues that the requirements for diversity jurisdiction have been met.

HSBC has also filed a motion to dismiss. The motion argues that Snelling's tort claims are preempted by federal law; that his allegations do not provide him with any rights under 15 U.S.C. § 1666i; that his fraud claim is barred by the statute of limitations; that he fails to state a claim for negligence and emotional distress, and that his fraud and Missouri Merchandising Practices Act claims do not satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. HSBC asks, in the alternative to dismissing for failure to state a claim, that Snelling be required to plead his claims more definitely.

Two additional motions were filed. First, Snelling asks that this court find that the unserved defendant HSBC Holdings has entered a general appearance in this case. Second, HSBC moves to strike a surreply and a supplemental memorandum in support that Snelling filed in response to two of the above motions. I will reach these latter motions after addressing the motions to remand and dismiss.

## II.    DISCUSSION

### A.    <u>Motion to Remand for Lack of Subject-Matter Jurisdiction</u>

As a preliminary matter, I disagree with HSBC's contention that Snelling's *pro se* motion to remand should be denied because it lacks a memorandum. Unless otherwise ordered by the court, Local Rule 7-4.01 requires that a movant must file a memorandum in support of the motion "including any relevant argument and citations to any authorities on which the party relies." Although Snelling's motion does not include a separate memorandum, the motion does provide some argument and cites to the statutes governing diversity jurisdiction and removal, as well as some case law. *See* Plaintiff's Mot. Remand, ECF. Doc. 12. Snelling has provided the court with sufficient bases for proceeding to the merits of his motion, and I will treat the filing as if it complied with the rule.[4]

### 1.    *Legal Standards for Diversity Jurisdiction*

This federal court is a court of limited jurisdiction. The diversity statute, 28 U.S.C. § 1332(a), grants jurisdiction over cases where the matter in controversy is greater than $75,000 and the dispute is between "(1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title, as plaintiff

---

[4] The same analysis applies to each of Snelling's motions considered herein.

and citizens of a State or of different States." *Wu v. Ryder Truck Rental, Inc.*, 561 F. Supp. 2d 1061, 1062 (E.D. Mo. 2008) (quoting 28 U.S.C. § 1332(a)). The same statute also sets forth the citizenship qualifications for a corporation, which "shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). "It is well established that diversity jurisdiction attaches only when all parties on one side of the litigation are of different citizenship from all of those on the other." *Stouffer Corp. v. Breckenridge*, 859 F.2d 75, 79 (8th Cir. 1998).

The party seeking the federal forum has the burden of pleading diversity of citizenship of the parties, *Walker v. Norwest Corp.*, 108 F.3d 158, 161 (8th Cir. 1997), and also bears the burden of establishing diversity jurisdiction by a preponderance of the evidence. *Sheehan v. Gustafson*, 967 F.2d 1214, 1215 (8th Cir. 1992). "[A]ll doubts about federal jurisdiction [are resolved] in favor of remand." *Transit Cas. Co v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997).

2.      *Diversity Analysis*

Though the Notice of Removal states that HSBC is a Delaware corporation with a principal place of business in Illinois, Snelling contends that the entity shares Missouri citizenship with him and so the parties are not diverse. Snelling

does not challenge the location of HSBC's principal place of business, but instead argues that HSBC is a Missouri corporation because it is registered to do business in that state.

When diversity jurisdiction is challenged, it ordinarily would be the defendant's burden – as it is the entity desirous of this court's jurisdiction – to give evidence of the parties' citizenship. *See Sheehan v. Gustafson*, 967 F.2d 1214, 1215 (8th Cir. 1992). However, plaintiff's own exhibit shows that HSBC is a Delaware entity. *See* Pl.'s Mot. Remand Reply Br., Ex. 1, ECF. No. 25.

So far as Snelling argues that registering with the Missouri Secretary of State to do business is the same as being incorporated in Missouri, that argument fails. Merely being registered to conduct business in a state will not confer jurisdiction under 28 U.S.C. § 1332. *Cf. Kingsland Invs., L.P. v. Schaefer Grp., Inc.*, No. 4:09CV1804CDP, 2010 WL 147811, at *2 (E.D. Mo. Jan. 11, 2010) (evaluating business registration as one component of the "total activity test" to determine principal place of business); *Randazzo v. Eagle-Picher Indus., Inc.*, 117 F.R.D. 557, 558 (E.D. Pa. 1987) ("The allegation that defendant has a "registered office" in Pennsylvania is not equivalent to an allegation that defendant's principal place of business is in Pennsylvania."); *Carter v. Clear Fir Sales Co.*, 284 F. Supp. 386, 387 (D. Or. 1967) ("The fact that a corporation may be incorporated in more than one state, under the provisions of § 1332(c), does not mean that a

corporation becomes a citizen of every state which requires it to secure a license or to domesticate itself, in order to do business in that state.").

Snelling is a citizen of Missouri; Kodak is a citizen of New Jersey and New York; and the HSBC defendants are citizens of the United Kingdom, Delaware, and Illinois. The parties are diverse.

3. *Amount-in-Controversy Analysis*

Where diversity forms the basis for removal, the removing party must also prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. *In re Minn. Mut. Life Ins. Co. Sales Practices. Litig.*, 346 F.3d 830, 834 (8th Cir. 2003). If "it appears to a legal certainty" that the value of the plaintiff's claim is less than that amount, the complaint will be dismissed. *Trimble v. Asarco, Inc.*, 232 F.3d 946, 959 (8th Cir. 2000). The precise issue for the court to determine "is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are: In other words, an amount that a plaintiff claims is not 'in controversy' if no fact finder could legally award it." *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002). Ordinarily, the amount claimed by the plaintiff controls in determining whether diversity jurisdiction exists. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938); *see also Zunamon v. Brown*, 418 F.2d 883, 885 (8th Cir. 1969).

However, the plaintiff's allegations of the jurisdictional amount are not necessarily dispositive of the issue.  *See Zunamon*, 418 F.2d at 885.

"Punitive damages, of course, may be used to establish diversity jurisdiction."  *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 766 (8th Cir. 2001).  Fraud is an intentional tort, *Werremeyer v. K.C. Auto Salvage Co., Inc.*, 134 S.W.3d 633, 636 (Mo. banc 2004), and as such, Missouri allows for an award of punitive damages should the complaining party make a submissible case.  *See Perkins v. Dean Machinery Co.*, 132 S.W.3d 295, 300 (Mo. Ct. App. 2004).  To obtain punitive damages, the plaintiff must show that the defendant had a culpable mental state, "either by a wanton, willful or outrageous act or reckless disregard (from which evil motive is inferred) for an act's consequences."  *Id.* (quoting *Fabricor, Inc. v. E.I. DuPont de Nemours & Co.*, 24 S.W.3d 82, 96–97 (Mo. Ct. App.  2000)).

Snelling's count for fraudulent inducement and concealment alleges that the HSBC defendants knew the warranties and anti-fraud representations were deceptive and that they intended for consumers to rely upon them.  Although the specific damages in this case do not amount to more than $75,000, at this point in the proceedings, it is plausible that a jury might award punitive damages.

Given the extent of the alleged damages, the claim for punitive damages, and the fact that there is no indication plaintiff intends to seek or limit his recovery

to $75,000 or less, the court cannot say that it appears to a legal certainty this action fails to meet the jurisdictional amount. Snelling's motion to remand will be denied.

### B. **Motion to Dismiss**

1. *Legal Standards for Motion to Dismiss*

The purpose of a motion to dismiss under Rule 12(b) (6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. *Id.* A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. *See also id.* at 563 (stating the "no set of facts" language in *Conley v. Gibson*,

355 U.S. 41, 45–46 (1957), "has earned its retirement"). "Factual allegations must

be enough to raise a right to relief above the speculative level." *Id.* at 555.

2.     *Preemption*

HSBC contends that Snelling's tort claims are barred by operation of the

Truth in Lending Act (TILA)[5] and its implementing regulation, Regulation Z,

because TILA only allows claims other than those arising in tort. Regulation Z

provides:

> (c)  *Right of cardholder to assert claims* or defenses against card
> issuer – (1) General rule. When a person who honors a credit card
> fails to resolve satisfactorily a dispute as to property or services
> purchased with the credit card in a consumer credit transaction, *the
> cardholder may assert against the card issuer all claims (other than
> state law tort claims)* and defenses arising out of the transaction and
> relating to the failure to resolve the dispute.

12 C.F.R. § 1026.12 (2014) (emphases added).[6]

Preemption of a state law may be "either express or implied." *Gade v. Nat'l

Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992). Express preemption occurs

when preemption is "expressly stated in the statute's language." *Id.* HSBC makes

no argument that any state law conflicts with TILA or that TILA has occupied the

---

[5] 15 U.S.C. § 1601 *et seq.*

[6] Regulation Z echoes 15 U.S.C. § 1666i, which states that subject to certain limitations, "a card issuer who has issued a credit card to a cardholder pursuant to an open end consumer credit plan *shall be subject to all claims (other than tort claims)* and defenses arising out of any transaction in which the credit card is used . . . ." (emphasis added).

field such that the state law would be impliedly preempted by the federal law.  *See id.*  This analysis is therefore limited to express preemption.

HSBC cites *Permobil, Inc. v. American Express Travel Related Services*, 571 F. Supp. 2d 825 (M.D. Tenn. 2008), for the proposition that TILA expressly preempts all state law tort claims brought by a cardholder against a credit card company that stem from a dispute between the cardholder and a merchant over a purchased product.  However, that court declined to find that Regulation Z preempts state tort claims.  *Id.* at 838 ("Such a reading would run contrary to Congressional intent, burdening cardholders and limiting their remedies.").

Neither Regulation Z nor TILA itself contains the sort of "clear," "manifest," and "unmistakabl[e]" language that has been required in order to find that Congress has expressly preempted state law.  *See, e.g.*, *Jones v. Rath Packing Co.*, 430 U.S. 519 (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947) and *Fl. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142 (1963)).[7] Rather than limiting state remedies, the plain language of both TILA and its

---

[7] Indeed, 15 U.S.C. § 1666j(a) explicitly states that Part D, which includes 15 U.S.C. § 1666, only preempts state law so far as the law is inconsistent with TILA:

> This part does not annul, alter, or affect, or exempt any person subject to the provisions of this part from complying with, the laws of any State with respect to credit billing practices, except to the extent that those laws are inconsistent with any provision of this part, and then only to the extent of the inconsistency.  The Bureau [of Consumer Financial Protection] is authorized to determine whether such inconsistencies exist.  The Bureau may not determine that any State law is inconsistent with any provision of this part if the Bureau determines that such law gives greater protection to the consumer.

implementing regulation indicate that Congress chose to limit the extent of the federal remedy created by TILA.

This reading is backed by the legislative history surrounding TILA, which reflects Congress's intent provide a civil remedy for aggrieved debtors. *See Thomas D. Mangelsen, Inc. v. Heartland Payment Sys., Inc.*, No. 8:05CV33, 2005 WL 2076421, at *3 (D. Neb. Aug. 26, 2005) (citing H.R. Rep. No. 90–1040 (1968), *reprinted in* 1968 U.S.C.C.A.N. 1962, 1976); *see also* 15 U.S.C. § 1601(a) ("It is the purpose of this subchapter . . . to protect the consumer against inaccurate and unfair credit billing and credit card practices."). It is also backed by the interpretation of Regulation Z provided by the Bureau of Consumer Financial Protection. *See* 12 C.F.R. § Pt. 1026, Supp. I, § 1026.28.6 ("A state law that permits consumers to assert claims and defenses against the card issuer without regard to the $50 and 100-mile limitations of § 1026.12(c) (3) (ii) would not be preempted."). TILA and Regulation Z do not preempt Snelling's tort claims.

3.    *TILA's Requirement of a Good Faith Attempt to Resolve the Dispute*

HSBC next argues that Snelling's claims are not actionable as a matter of law under TILA because that statute allows a claim only where the cardholder has first "made a good faith attempt" to resolve the dispute with the merchant. *See* 15 U.S.C. § 1666i(1). However, it is not clear whether Snelling even asserts a TILA claim. Although Snelling lists the causes of action presented in Count I as

including "Fraudulent Inducement to Contract/Concealment of a Material Fact/Breach/Credit Card User Law/Punitive Da[m]ages," he does not assert which "credit card user law" forms the basis of the action. Nor does he raise any facts specifically relating to such a cause of action. Finally, the existence of a TILA or other federal claim was not raised by either party in briefing of the motion to remand.

    4.    *Statute of limitations*

HSBC argues that Snelling's claim for fraudulent inducement should be dismissed because the statute of limitations for that claim has run. A court may grant a motion to dismiss on the grounds that the claim is barred by operation of the statute of limitations if the complaint itself establishes that the claim is time-barred. *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995).

Section 516.120 of the Revised Statutes of Missouri provides a two-component limitations period for an action in fraud. *Graf v. Michaels*, 900 S.W.2d 659, 661 (Mo. Ct. App. 1995) (citing R.S. Mo. § 516.120). Boiled down to its essence, the statute requires that the "action is to be brought within fifteen years in any event," but "if the fraud be discovered or is discoverable prior to the lapse of ten years, then within five years after its discovery." *Id.* (quoting *Anderson v. Dyer*, 456 S.W.2d 808, 812 (Mo. Ct. App. 1970) (alteration omitted).

Missouri law deems the action to accrue not "when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment . . . ." R.S. Mo. § 516.100. Damages are "capable of ascertainment" within the meaning of § 516.100 when the aggrieved party first realizes that it will sustain damage. *Polytech, Inc. v. Sedgwick James of Mo., Inc.*, 937 S.W.2d 309, 311 (Mo. Ct. App. 1996). "The test is to 'ascertain the time when plaintiff could have first maintained the action to a successful result.'" *Id.* at 312 (quoting *Janssen v. Guar. Land Title Co.*, 571 S.W.2d 702, 705 (Mo. Ct. App. 1978)).

The current action was filed in state court on January 17, 2014, and from there removed to this court. However, Snelling filed essentially the same suit in state court on December 3, 2012. That case was removed to this court and voluntarily dismissed without prejudice on March 7, 2013. Missouri law provides a one-year savings period during which a nonsuit may be refiled. *See* R.S. Mo. § 516.230. The instant suit was brought within one year of the dismissal of Snelling's original suit, and so the suit is not untimely.

HSBC argues that the 100-mile purchase requirement was stated on the back of one of Snelling's credit card bills issued in February 2000. Thus, it contends that the statute of limitations should have run by no later than February 2005. However, Snelling's Complaint states that several times during 2007 and 2008, he

disputed charges on his Visa card and HSBC did not enforce the 100-mile limitation clause during those disputes. The Complaint also states that it was not until HSBC refused to intervene with Kodak in December 2008 or January 2009 that Snelling was harmed. After construing these pleadings and inferences arising from them in the light most beneficial to Snelling, I find that there exists a question of fact as to when he should have realized that he would be harmed by the defendant's actions. The motion will be denied so far as it relies upon the statute of limitations.

     5.    *Count II - Negligence*

HSBC contends that Snelling fails to state a claim for negligence in Count II. The elements of a negligence claim are: "(1) the existence of a duty to conform to a certain standard of conduct to protect others against unreasonable risks; (2) breach of the duty; (3) proximate cause; and (4) actual damages." *Ivey v. Nicholson–McBride*, 336 S.W.3d 155, 157 (Mo. Ct. App. 2011). In Missouri, a mere breach of contract does not ordinarily provide a basis for tort liability. *Bus. Men's Assur. Co. of Am. v. Graham*, 891 S .W.2d 438, 453 (Mo. Ct. App.1994). If the duty arises solely from the contract, the action is contractual. *Id.*

Snelling pleads that HSBC owed a duty of care to him based upon its acquisition of "the Visa Credit Card and its benefit of the bargain" and violated that duty when it "failed to honor their contractual obligations to plaintiff."

Compl. ¶ 39. Even when read in the light most beneficial to Snelling, his pleadings do not allege any duty independent of the contract. Snelling's claim for negligence will be dismissed.

      6.        *Count VIII – Negligent Infliction of Emotional Distress*

HSBC contends Snelling cannot assert a claim for negligent infliction of emotional distress. There are six elements to the claim. The first four, which are common to any negligence action, are: "(1) a legal duty of the defendant to protect the plaintiff from injury, (2) breach of the duty, (3) proximate cause, and (4) injury to the plaintiff." *Cf. Henson v. Greyhound Lines, Inc.*, 257 S.W.3d 627, 629 (Mo. Ct. App. 2008) (quoting *Thornburg v. Fed. Express Corp.*, 62 S.W.3d 421, 427 (Mo .App. W.D. 2001)). In order to recover damages, the plaintiff must prove two additional elements: "(1) that the defendant should have realized his conduct involved an unreasonable risk of causing the distress, and (2) that the emotional distress or mental injury is medically diagnosable and of sufficient severity to be medically significant." *Id.*

Snelling bases his charge of negligent infliction of emotional distress on a duty allegedly owed by HSBC. However, Snelling fails to identify the source of this duty. He merely alleges that HSBC should have known that its actions would cause severe anguish and distress and that the distress he suffered aggravated his heart condition. To the extent that Snelling's complaint can be construed to allege

a duty arising from his contract, such a claim is foreclosed for the reasons discussed when addressing his negligence claim.

There is a second potential source of duty. "A duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury. If, under the circumstances, a reasonably prudent person would have anticipated danger and provided against it, courts will recognize a legal duty to prevent harm." *Millard v. Corrado*, 14 S.W.3d 42, 47 (Mo. Ct. App. 1999) (internal citations omitted).

This second source of duty is equally unavailing. In the situation described by Snelling, a reasonable person (or corporation) would not have foreseen the danger of extreme emotional distress flowing from the failure to intercede in a billing dispute. From the information available to the defendant, a reasonable person would have assumed that the plaintiff would simply act independently to resolve the issue, including bringing a claim in small-claims court. *Cf. Davis v. MCI Commc'ns Servs., Inc.*, 421 F. Supp. 2d 1178, 1184–85 (E.D. Mo. 2006) (holding that a suspension of contracted telephone services could not give rise to a claim for negligent infliction of emotional distress because a defendant would assume the consumer would use an alternative provider to minimize inconvenience).

7.    *Counts I - Fraud*

HSBC next alleges that Snelling's fraud claim in Count I fails to meet the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure.

There are five elements to a submissible case for fraud:

> (1) a false material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the statement; (5) the hearer's reliance on its truth, and the right to rely thereon; and (6) proximate injury.

*Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 411 (Mo. Ct. App. 2000).

Rule 9(b) sets forth a heightened pleading requirement for cases alleging fraud or mistake:  in such cases, "[a] party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  That rule's "particularity requirement demands a higher degree of notice than that required for other claims."  *United States ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 2003) (citation omitted).  "Under Rule 9(b), a plaintiff must plead such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.  In other words, the party must typically identify the 'who, what, where, when, and how' of the alleged fraud."  *BJC Health Sys. v. Columbia*

*Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (internal quotation marks and quoted cases omitted).

This higher degree of notice "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *United States ex rel. Joshi v. St. Luke's Hosp. Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (citations omitted). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (quoting *Commercial Prop. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)).

Snelling's fraud count generally lacks the level of particularity demanded by Rule 9(b). For example, he alleges "during television commercials in the 2007s" and in commercials aired "in the 1990s, the advertisement stated and represented that, by using a Visa Credit Card . . . the buyer was protected from fraud, and would enjoy . . . an extended warranty of One year . . ." Compl. ¶¶ 7, 14. He further states that HSBC never revealed that a 100-mile geographic limitation applied to the representations. However, Snelling never alleges when in those years the commercials were aired – let alone who aired them or how the advertisements connect to these defendants. Snelling's fraud claim lacks the specificity required by Rule 9(b).

8.    *Count III - Missouri Merchandising Practices Act*

The MMPA, R.S. Mo. Ch. 407, *et seq.*, prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce. . . ."  R.S. Mo. § 407.020.1.  To state a claim for violation of the MMPA, a plaintiff must allege that he (1) leased or purchased a product sold or advertised by defendants; (2) primarily for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful by § 407.020.  *Chochorowski v. Home Depot U.S.A., Inc.*, 295 S.W.3d 194, 197–98 (Mo. Ct. App. 2009) (citing § 407.025).  To satisfy the fourth element, the plaintiff is required "to allege facts establishing that defendants used or employed a deception, fraud, false pretense, false promise, misrepresentation, unfair practice, concealment, suppression, or omission in connection with the lease" or purchase of the product.  *Id.* (citing § 407.020.1).

HSBC presents four arguments in favor of its motion to dismiss Snelling's Count for violation of the Missouri Merchandising Practices Act.  First, it argues that the underlying transaction was not for "personal" use.  Second, it argues that Snelling's claims lack any "connection" with a sale or advertisement of

merchandise.  Third, it argues that Snelling cannot show causation.  Finally, HSBC argues that Snelling's complaint lacks the specificity required by Rule 9(b).

HSBC first argues that Snelling fails to allege that the printer was purchased "primarily for personal" use as required by the MMPA.  However, Snelling's complaint states that he used the Visa card for his own personal use to purchase goods on credit.  Compl. ¶ 44.  Construed in the light most beneficial to Snelling, the allegation meets the personal use element of the MMPA.

HSBC next contends that because Snelling's claims are based upon representations involving his credit card, they are not representations "in connection with the sale or advertisement of any merchandise in trade or commerce."

The Supreme Court of Missouri has recently construed "in connection" as used in the MMPA to broadly mean "to have a relationship."  *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 414 (Mo. banc 2014).  The court held that the MMPA's prohibition of deceptive practices applies whenever "there is a relationship between the sale of merchandise and the alleged unlawful action" and that this action "may occur at any time before, during or after the sale and by any person."  *Id.* (citing § 407.020.1).  That court noted the trend towards increased protection of consumers and held that the MMPA applied to a loan servicer who entered the relationship after a buyer concluded the transaction.  *Id.* at 416.

Snelling alleges that he was deceptively induced into using his Visa credit card to purchase a printer. The alleged deceptive acts are clearly related to the purchase of goods for personal use. I believe that Missouri courts would construe the MMPA to include the claims brought here.

HSBC next argues that Snelling cannot establish the requisite element of causation, because the 100-mile limitation was stated on the back of his billing statements. It likens this case to *Padberg v. Dish Network LLC*, No. 11-04035-CV-C-NKL, 2012 WL 2120765, at *6 (W.D. Mo. June 11, 2012). However, that case involved a plaintiff who was first shown misleading advertisements and then read and signed a contract explicitly stating the defendant was not obligated to perform as advertised. *Id.* at *6. Here, it remains a question of fact as to whether Snelling knew of or even agreed to the terms stated on the billing statement.

HSBC finally argues that Snelling's MMPA claims in Count III fail to meet the Rule 9(b) pleading standards. A number of District Courts in Missouri have applied the heightened standard of Rule 9(b) of the Federal Rules of Civil Procedure when reviewing claims under the MMPA. *Stephens v. Arctic Cat Inc.*, No. 4:09CV02131 AGF, 2011 WL 890686, at *7 (E.D. Mo. Mar. 14, 2011) (collecting cases).

Snelling's MMPA claims share the same deficiencies with respect to the particularity of its pleadings, as did his claim for fraud in Count I. Although

Snelling alleges that the advertisements were "aired in the 2007s" "in the County of St. Louis," he does not specify who aired the advertisements. As such, this claim is also subject to dismissal.

Snelling has failed to state a claim as to his claim for negligence in Count II, for negligent infliction of emotional distress in Count VIII, for fraud in Count I, and for violation of the MMPA in Count III. However, because the Federal Rules of Civil Procedure instruct courts to liberally allow amendments to pleadings, Fed. R. Civ. P. 15(a)(2), this Court will grant in part defendant's motion without prejudice and grant Snelling leave to amend his complaint within twenty (20) days, for the limited purpose of attempting to bring his fraud and MMPA claims into conformity with the heightened pleading requirements of Rule 9(b), if possible. The motion will be granted in part with prejudice as to Snelling's negligence and negligent infliction of emotional distress claims.

## Motion to Strike

HSBC has also filed a motion to strike Snelling's surreply [ECF Doc. 30] and his "supplemental reply" [ECF Doc. 29]. Local Rule 7-4.01 allows the filing of additional memoranda beyond a reply "only with leave of Court." Snelling did not request this court's leave before filing his additional memoranda, and so the filings will be stricken.

## Motion for Finding of General Appearance

Snelling has filed a motion asking that this court find that the unserved defendant HSBC Holdings, plc, has entered a general appearance in this case. HSBC Holdings is not listed in the case caption and has not been served. It appears that Snelling is using this "general appearance" argument in an attempt to avoid complying with the various laws that govern procedure for bringing suit against a foreign company.

Snelling bases this argument on the consent by HSBC Holdings to the removal of the action. But "[r]emoval, in itself, does not constitute a waiver of any right to object to lack of personal jurisdiction." *Nationwide Eng'g & Control Sys., Inc. v. Thomas*, 837 F.2d 345, 347–48 (8th Cir. 1988) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1395 (1969)). HSBC Holdings has not filed any pleading or memorandum in this action, and it will not be deemed to have entered a general appearance solely through its consent to removal. *See also Norsyn, Inc. v. Desai*, 351 F.3d 825, 830 (8th Cir. 2003) (noting that removal does not eliminate service requirement).

As the time for obtaining service on HSBC Holdings, plc, has now passed, Snelling must show cause why his claims against that entity should not be dismissed without prejudice. This filing is due by **February 17, 2015**.

Finally, Snelling has reported to the court that the bankruptcy proceedings involving defendant Kodak remain ongoing in the United States Bankruptcy Court for the Southern District of New York. All claims involving Kodak will be stayed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to remand the case to state court [# 12] is **denied**.

**IT IS FURTHER ORDERED** that defendant HSBC Card Services Inc.'s motion to dismiss [# 15] is **granted in part**. Plaintiff's claims for negligence in Count II and negligent infliction of emotional distress in Count VIII will be **dismissed with prejudice**. Plaintiff's claims for fraud in Count I and for violation of the Missouri Merchandising Practices Act in Count III will be **dismissed without prejudice**.

**IT IS FURTHER ORDERED** that Snelling shall have leave to amend his complaint within twenty (20) days, for the limited purpose of attempting to bring his fraud and Missouri Merchandising Practices Act claims into conformity with the heightened pleading requirements of Rule 9(b), if possible.

**IT IS FURTHER ORDERED** that defendant HSBC Card Services Inc.'s motion to strike plaintiff's June 9, 2014 filings [# 31] is **granted**, and plaintiff's supplemental reply [# 29] and surreply [# 30] will be stricken.

**IT IS FURTHER ORDERED** that plaintiff's motion for a finding of entry of general appearance as to named defendant HSBC Holdings, plc, [# 13] is **denied**.

**IT IS FURTHER ORDERED** that plaintiff must by **February 17, 2015**, show cause why his claims against HSBC Holdings, plc, should not be dismissed without prejudice for failure to obtain service.

**IT IS FINALLY ORDERED** that all claims against Eastman Kodak Co. are stayed pending resolution of the bankruptcy proceedings involving that entity.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of February, 2015.