# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

LONNIE SNELLING,          )
                                      )

        Plaintiff,        )
                                      )

        vs.             )        Case No. 4:14 CV 431 CDP
                                      )

HSBC CARD SERVICES, INC., et al.,  )
                                      )

        Defendants.      )

## MEMORANDUM AND ORDER

This case comes before me on a second motion to dismiss filed by HSBC Card Services, Inc. After ruling on the first motion, I granted plaintiff Lonnie Snelling the opportunity to amend his fraud and Missouri Merchandising Practices Act (MMPA) claims. In addition to amending those claims, Snelling added a count for unjust enrichment, which will be dismissed under Rule 41(b) as requested by HSBC. Snelling's fraud claims will also be dismissed for failure to state a claim. Snelling's breach of contract and MMPA counts do state plausible claims and are timely, however, so HSBC's motion to dismiss will be denied as to those counts.

## I. Background

*Pro se* plaintiff Lonnie Snelling sued HSBC Card Services, Inc. (HSBC), its parent company HSBC Holdings, plc, and the Eastman Kodak Company (Kodak)

in state court, asserting a number of claims related to his purchase of a Kodak inkjet printer with a Visa credit card serviced by HSBC. HSBC removed, and all claims against Kodak were stayed pending resolution of bankruptcy proceedings.

The First Amended Petition,[1] filed January 17, 2014, alleged that Visa television advertisements aired "in the 2007s" stated that buyers making purchases with Visa credit cards would be protected from fraud and given an extended warranty. Between 1990 and 2007, Snelling disputed several charges with sellers; these were resolved with the assistance of the credit card company. HSBC acquired Snelling's credit card contract sometime in 2007. Under that contractual relationship, Snelling would use the Visa card to purchase goods from vendors and make payments to HSBC at the end of a billing period.

HSBC began enforcing a policy under which purchases made more than 100 miles from the cardholder's home would not receive fraud protections or assistance with vendor disputes. However, Snelling alleges the 100-mile limit was neither disclosed at the time HSBC notified Snelling that it was taking over his account nor during the airing of television commercials between 2007 and 2008. HSBC also failed to disclose the new policy when it assisted Snelling with several charge disputes between 2007 and 2008. In December 2008, Snelling purchased a defective printer from Kodak. After exchanging several letters, HSBC declined to

---

[1] Snelling amended his petition once in state court before it was removed.

assist Snelling with his dispute.  Snelling alleged this breached the duties HSBC owed to Snelling as well as its contractual obligations.

The precise claims asserted in the First Amended Petition were difficult to ascertain.  For example, Count I presented claims for "fraudulent inducement to contract/concealment of a material fact/breach/credit card user law/punitive damages."  Allegations supporting those claims were strewn throughout the petition.

HSBC moved to dismiss the fraud, Missouri Merchandising Practices Act (MMPA), negligence, and negligent infliction of emotional distress claims presented in the First Amended Petition.  This court dismissed with prejudice Snelling's claims for negligence and negligent infliction of emotional distress, because he failed to allege a duty independent of his credit card contract.  *See* Order, Feb. 3, 2015, ECF No. 38.  It also dismissed without prejudice the fraud and MMPA claims for failure to specify when and who aired the advertisements or any connection with HSBC.  Snelling was afforded the opportunity to amend his pleadings "for the limited purpose of attempting to bring his fraud and Missouri Merchandising Practices Act claims into conformity with the heightened pleading requirements of Rule 9(b), if possible."  *See* Order, Feb. 3, 2015, ECF No. 38 at p. 27.

On February 24, 2015, Snelling filed his Second Amended Complaint. ECF No. 43. This pleading amended his fraud and MMPA claims. Snelling also added a claim for unjust enrichment and set forth his breach of contract claim in a separate count.

Snelling's Second Amended Complaint sets forth a broader picture of what he alleged transpired. He again alleges that from the 1990s through 2006, television commercials advertised that purchases made with a Visa card would be protected from fraud and granted a one-year extended warranty. Snelling obtained a Visa card through "Direct Merchants Bank," which he used from 2003 through 2006. During that time, Direct Merchants assisted Snelling with several vendor charge disputes.

In 2007, HSBC acquired Snelling's Visa contract. The notice that future payments on Snelling's Visa card should be directed to HSBC failed to mention that HSBC would begin enforcing a mileage limit on disputed charges. Purchases made more than 100 miles from a cardholder's residence would no longer receive fraud or charge dispute protections. Visa television commercials aired on behalf of HSBC on KMOV Channel 4 in St. Louis County, Missouri, from 2006 through December 2008. These commercials, which featured voice-over actors Keeley Hawnes, Morgan Freeman, and Samuel L. Jackson, also did not disclose the 100-mile policy. In October 2008, Snelling had a dispute with a vendor over a

defective cooker purchased with his Visa card; HSBC intervened without mentioning the 100-mile radius limitation. Neither was the 100-mile limitation ever mentioned during Snelling's interactions with Direct Merchants from 2003 through 2006.

On December 8, 2008, Snelling saw a television advertisement for a Kodak printer and placed an order by telephone. The printer was subject to a thirty-day return policy. After discovering that the printer would not work with his computer, Snelling requested a return label on December 23, 2008. He also telephoned HSBC to report that he was disputing the charge. Between December 26, 2008 and January 23, 2009, Snelling and HSBC exchanged letters regarding the Kodak printer dispute. The January 23 letter from HSBC requested additional information related to Snelling's return of the printer to Kodak. The letter stated that HSBC would consider the matter resolved unless it received a written response within ten days. On February 23, 2009, Snelling wrote a letter to HSBC memorializing conversations he had with "Gii Gii" and "Christina" from the HSBC dispute department. This letter references a conversation between Snelling and Christina, who, on February 3, 2009, informed Snelling that the charge "would be taken care of."

Snelling appears to assert four classes of claims against HSBC. Count I alleges fraudulent inducement and fraudulent concealment claims based on the

television advertisements, 100-mile policy, and Christina's statement. Count II asserts a breach of contract claim. Count III presents a claim under the Missouri Merchandising Practices Act. Count IV alleges for the first time a claim for unjust enrichment.

HSBC moves to dismiss the entire complaint under Rule 41(b), arguing that Snelling disregarded this court's Order of February 3 by submitting Counts II and IV. It also moves to dismiss each count against it for failure to state a claim and for failure to file within the statutory limitations period.

## II. <u>Discussion</u>

### A. <u>Request for Dismissal under Rule 41(b)</u>

HSBC first moves for dismissal of this action under Rule 41(b) of the Federal Rules of Civil Procedure. It contends Snelling added claims for unjust enrichment and breach of contract in direct defiance of this court's Order of February 3, 2015. *See* ECF No. 38. Snelling responds that the breach of contract claim was set forth in Count I of his First Amended Petition and so is not new. He also argues that his earlier pleadings should be construed to have presented an unjust enrichment claim.

Rule 41(b) allows a defendant to seek dismissal of all or part of the claims against it in the event that a plaintiff fails to comply with an order of court. Fed. R. Civ. P. 41(b). The Rule promotes the expeditious handling of cases and protects

opposing parties from prejudice arising from vexatious and dilatory conduct.

*Vasquez v. Hill*, No. 4:11CV01561AGF, 2012 WL 4936085, at *2 (E.D. Mo. Oct.

17, 2012) (citing *Hutchins v. A.G. Edwards & Sons, Inc.*, 116 F.3d 1256, 1260 (8th

Cir. 1997)).  Dismissal with prejudice under Rule 41(b) "is an 'extreme sanction'

that should only be available for 'willful disobedience of a court order or where a

litigant exhibits a pattern of intentional delay.'"  *Siems v. City of Minneapolis*, 560

F.3d 824, 826 (8th Cir. 2009) (quoting *Hunt v. City of Minneapolis*, 203 F.3d 524,

527 (8th Cir. 2000)).  A defendant seeking dismissal under Rule 41(b) need not

actually show bad faith, but must show that the plaintiff acted voluntarily and

purposefully.  *See Hunt*, 203 F.3d at 527.

Several considerations must be addressed when gauging the propriety of

dismissal under Rule 41(b).  First, the court weighs the need to advance its docket

against the irrevocable extinguishment of a litigant's claim.  *See Doe v. Cassel*,

403 F.3d 986, 990 (8th Cir. 2005).  It then considers the proportionality of the

sanction in light of the litigant's transgressions.  *Smith v. Gold Dust Casino*, 526

F.3d 402, 405 (8th Cir. 2008) (citing *Rodgers v. Curators of Univ. of Mo.*, 135 F.3d

1216, 1219 (8th Cir. 1998).  Finally, it gauges whether a less severe sanction could

remedy the prejudice to the opposing party.  *See id.* at 406.

This court's Order of February 3 afforded Snelling the opportunity to amend

his First Amended Petition a second time "for the limited purpose of attempting to

bring his fraud and Missouri Merchandising Practices Act claims into conformity with the heightened pleading requirements of Rule 9(b), if possible."[2]  That Order did not grant Snelling leave to assert additional claims.  Snelling's addition of an unjust enrichment claim constitutes the voluntary and purposeful defiance of this court's Order.  Given Snelling's *pro se* status, I find that dismissal of that claim, rather than the action as a whole, is an appropriate remedy.[3]

HSBC contends that Snelling also disobeyed that Order by adding a separate count for breach of contract.  When liberally read, however, Snelling's First Amended Complaint included a breach of contract claim against HSBC.[4]  Although Snelling technically violated this court's Order by setting forth his breach of contract claim in a separate count, I do not find that the interests of justice require dismissal of that claim.

## B.  Request for Dismissal Under Rule 12(b)(6)

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint.  The factual allegations of a complaint are assumed true and construed in favor of the plaintiff,

---

[2] *See* Order, Feb. 3, 2015, ECF No. 38 at p. 27.

[3] Although Snelling is *pro se*, he is not inexperienced.  Court records show that he has filed more than a dozen cases in this court.

[4] Indeed, this court dismissed Snelling's negligence claims because they were based on HSBC's failure to honor their contractual obligations.  *See* Order, Feb. 3, 2015, ECF No. 38 at 17–18.

"even if it strikes a savvy judge that actual proof of those facts is improbable."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing *Swierkiewicz v.*

*Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)); *Neitzke v. Williams*, 490 U.S. 319,

327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's

disbelief of a complaint's factual allegations."); *Scheuer v. Rhodes*, 416 U.S. 232,

236 (1974) (a well-pleaded complaint may proceed even if it appears "that a

recovery is very remote and unlikely"). The issue is not whether the plaintiff will

ultimately prevail, but whether the plaintiff is entitled to present evidence in

support of his claim. *Id.* A viable complaint must include "enough facts to state a

claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. *See also*

*id.* at 563 (stating the "no set of facts" language in *Conley v. Gibson*, 355 U.S. 41,

45–46 (1957), "has earned its retirement"). "Factual allegations must be enough to

raise a right to relief above the speculative level." *Id.* at 555.

### 1. *Fraud*

HSBC contends that Snelling's amended pleadings fail to state a claim for

fraud. Rule 9(b) sets forth a heightened pleading requirement for cases alleging

fraud or mistake: in such cases, "[a] party must state with particularity the

circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Under Rule

9(b), a plaintiff must plead such matters as the time, place and contents of false

representations, as well as the identity of the person making the misrepresentation

and what was obtained or given up thereby. In other words, the party must typically identify the 'who, what, where, when, and how' of the alleged fraud." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (internal quotation marks and quoted cases omitted).

This higher degree of notice "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *United States ex rel. Joshi v. St. Luke's Hosp. Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (citations omitted). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (quoting *Commercial Prop. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)).

Snelling attempts to set forth claims for "fraudulent inducement to continue contract" and fraudulent concealment of a material fact. There are five elements to a submissible case for fraud:

> (1) a false material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the statement; (5) the hearer's reliance on its truth, and the right to rely thereon; and (6) proximate injury.

*Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 411 (Mo. Ct. App. 2000). "The truth or falsity of the representation is determined as of the time it was made and as

of the time it was intended to be relied and acted upon." *Velder v. Cornerstone Nat. Ins. Co.*, 243 S.W.3d 512, 517 (Mo. Ct. App. 2008).

As a source of the misrepresentations, Snelling points to the Visa television commercials that advertised Visa users would be protected from fraud and granted an extended warranty. These commercials aired "in the 1990s through 2006." 2d Am. Compl. ¶ 8. Snelling does not contend that the advertisements were false at the time they were aired. Indeed, Snelling's own pleadings show that until HSBC took over his Visa contract in 2007, his prior servicer assisted in disputes without raising any geographical limitation. *See* 2d Am. Compl. ¶¶ 10.

Nor can HSBC's assistance with resolving Snelling's dispute over the sale of a cooker be construed as a representation that it would help with future disputes. A course of dealing or performance may be considered a representation and so satisfy the first element of a fraud claim. *Cf. Wion v. Carl I. Brown & Co.*, 808 S.W.2d 950, 954–55 (Mo. Ct. App. 1991) (explaining that when actions create a false impression, they can amount to a misrepresentation). However, the performance of a single act by itself does not constitute a representation that will support a claim for fraud. *See Consol. Grain & Barge, Co. v. Hobbs*, 397 S.W.3d 467, 477 (Mo. Ct. App. 2013) (reversing judgment by trial court on grounds that the completion of one contract by son of deceased contractor did not constitute representation that

future contracts would also be performed). HSBC's intervention in the cooker dispute cannot, by itself, support a fraud claim.

Snelling also contends that HSBC defrauded him by concealing its decision to invoke a 100-mile limitation on its fraud protections. Fraud by omission, or fraudulent nondisclosure, is not recognized as a separate tort in Missouri. *Harris v. Mid-West Egg Donation, LLC*, 365 S.W.3d 274, 276 (Mo. Ct. App. 2012). "Instead, in such cases, a party's silence in the face of a legal duty to speak replaces the first element: the existence of a misrepresentation." *Id.* (quoting *Hess v. Chase*, 220 S.W.3d 758, 765 (Mo. banc 2007)). The existence of a duty to disclose is essential to a fraudulent nondisclosure claim. *See id.* at 277.

A duty to speak arises where one party has superior knowledge or information that is not reasonably available to the other. *Hess*, 220 S.W.3d at 765. Snelling alleges that the 100-mile limitation was set out in the "Special rules for credit card purchases" that were included on the back of the HSBC Visa billing statement. 2d. Am. Compl. ¶¶ 38, 40. Thus, the first source of a duty to speak fails as a matter of law.

Missouri courts have considered at least five additional circumstances involving business transactions, in which a duty to disclose may arise:

> One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

*Kesselring v. St. Louis Grp., Inc.*, 74 S.W.3d 809, 814 (Mo. Ct. App. 2002) (quoting § 551(1) Restatement (Second) Torts)).  Snelling does not allege that he and HSBC shared a fiduciary or other relationship of trust, and so option (a) is unavailing.  Snelling also fails to specify facts supporting any other form of duty.  Each of the remaining sources of duty requires the defendant have knowledge of circumstances requiring him to speak.  Snelling alleges that HSBC knew his printer purchase exceeded the 100-mile limit, and that it failed to alert him that the purchase would not be protected from fraud.  But the Second Amended Complaint does not contain any allegation that, for example, HSBC knew that Snelling was

unaware of the 100-mile policy.  Indeed, while Snelling alleges several instances when HSBC failed to disclose the new mileage limit, Snelling never actually alleges that he was unaware of the new policy, let alone that HSBC knew of his ignorance.  As alleged, Count I cannot support a claim for fraudulent nondisclosure.

Snelling recites one other potential source of fraud: the conversation Snelling had with "Christina," the HSBC representative who allegedly told him "everything would be taken care of."  Snelling alleges that Christina's statement was false, that HSBC knew of its falsity, and it was said with the intent that Snelling rely on the statement.  Snelling further alleges that he did act in reliance on the statement, to the extent that he continued to participate in the Kodak printer charge dispute.  Snelling fails, however, to connect this misrepresentation to any damages.  The conversation with Christina occurred on February 3, 2009, almost two months after he used his Visa card to purchase the Kodak printer, and so it cannot have induced him to buy the printer or to forego returning it under the manufacturer's 30-day policy.  Snelling does not allege any facts showing how continued participation in the dispute harmed him.  Instead, Snelling provides only the conclusory statement that "[a]s a direct and proximate result of the representations . . . [he has] suffered monetary losses in excess of $300."  2d Am. Compl. ¶ 25.  This statement lacks the particularity required by Rule 9(b).  *See*

*Sherwin-Williams Co. v. Novak's Collision Ctr., Inc.*, No. 4:12CV02148 ERW, 2013 WL 5500107, at *5 (E.D. Mo. Oct. 3, 2013).  Snelling's fraud claim will be dismissed with prejudice.

    2.  *Missouri Merchandising Practices Act*

HSBC next argues Snelling fails to state a claim for violation of the Missouri Merchandising Practices Act (MMPA).  A number of United States district courts in Missouri have applied the heightened standard of Rule 9(b) of the Federal Rules of Civil Procedure when reviewing claims under the MMPA.  *See, e.g.*, *Stephens v. Arctic Cat Inc.*, No. 4:09CV02131 AGF, 2011 WL 890686, at *7 (E.D. Mo. Mar. 14, 2011) (collecting cases).

The MMPA was created to supplement common-law fraud.  *Clement v. St. Charles Nissan, Inc.*, 103 S.W.3d 898, 899 (Mo. Ct. App. 2003).  It "attempts to preserve fundamental honesty" and fair dealings, *id.*, by prohibiting the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in in connection with the sale or advertisement of any merchandise in trade or commerce. . . ."  *Id.* (quoting R.S. Mo. § 407.020.1).  To recover, a plaintiff must allege that they made a purchase for personal, family, or household purposes and suffered a loss caused by the defendant's deceptive conduct.  *See Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 415 n.3 (Mo. banc

2014).  The deceptive practices prohibited by the MMPA were left undefined.

*Clement*, 103 S.W.3d at 900.  Section 407.020 was written broadly in order to

"prevent evasion by overly meticulous definitions."  *Id.* at 900.  Accordingly, the

determination of whether fair dealing has been violated turns on the unique facts

and circumstances of each case.  *State ex rel. Webster v. Areaco Inv. Co.*, 756

S.W.2d 633, 635 (Mo. Ct. App. 1988).

Snelling contends that HSBC deceptively allowed television advertisements

aired on KMOV television channel 4 in St. County in 2008 to promise fraud

protection without alerting the public that those protections were subject to a 100-

mile radius restriction.  Snelling also contends that HSBC violated the MMPA by

failing to disclose the new distance limitation when it notified him that it was the

new servicer for his Visa card and by later placing that restriction on the back of its

billing statements.  Finally, Snelling asserts that the statement by Christina that his

dispute "would be taken care of" was deceptive.

HSBC argues that Snelling's MMPA claim fails as a matter of law, because

it was Visa and not HSBC that advertised the credit cards to the public.  However,

Snelling alleged that the Visa advertisements were made on behalf of all issuers of

Visa credit cards, including HSBC.  2d Am. Compl. ¶ 38.  This is a sufficient link

to survive this motion to dismiss.

HSBC next argues that Snelling's advertising allegations lack the specificity required by Rule 9(b) because he only narrows the date to 2008. The overarching principles of notice pleading dictate that a plaintiff does not need to plead fraud "with complete insight before discovery is complete." *Gunderson v. ADM Investor Servs., Inc.*, 230 F.3d 1363, at *3 (8th Cir. 2000) (unpublished). Indeed, even the heightened pleading standards of Rule 9(b) do not require a plaintiff bereft of discovery to plead facts outside of his reasonable knowledge. *See Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 921 (8th Cir. 2001). Snelling provides the year and the television channel on which the advertisements aired. He also provides the name of the actors who participated in the advertisements. This is sufficiently particular for pleading purposes at the dismissal stage.

HSBC next argues that Snelling cannot show that the statements regarding the 100-mile limitation caused Snelling's loss, because the exhibits show that the dispute resolution ended because of his own inaction and not because of distance. HSBC correctly notes that the court need not accept as true a plaintiff's allegations where they are contradicted by the complaint's exhibits. *Cf. McCarty v. Dana Holding Corp.*, No. 4:08-CV-690 (CEJ), 2008 WL 4865038, at *3 (E.D. Mo. Nov. 7, 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). However, Snelling's exhibits do not entirely contradict his allegations. For example, the exhibits indicate that HSBC had been working with Snelling over

the phone to resolve his dispute after one deadline for written communications had passed. *See* 2d Am. Compl. Exh. 13. The exhibits do not conclusively show the reason for the termination of the dispute resolution proceedings, and so dismissal on this record is not appropriate.

HSBC contends Snelling cannot show that he suffered any monetary loss from the Visa advertisements. However, after construing Snelling's complaint in the light most favorable to him, he alleges that HSBC billed him for a nonfunctioning printer in contravention of its own advertised anti-fraud policies. As pleaded, Snelling has alleged monetary loss. *Contrast Roberts v. BJC Health Sys.*, 391 S.W.3d 433, 438 (Mo. banc 2013) (holding that plaintiffs who were never billed for overcharges had not suffered monetary loss).

HSBC next argues that Christina's statement cannot support a MMPA claim because the statements came after he purchased merchandise and so lack the "connection" required by the MMPA. As discussed in the Order of February 3, Missouri courts construe "in connection with" broadly. The deceptive practice "may occur at any time before, during, or after the sale and by any person." *Conway*, 438 S.W.3d at 414 (applying the MMPA to a loan servicer who entered relationship after buyer entered transaction). As pleaded, Christina's statement that Snelling's dispute "would be taken care of" clearly has a connection with the printer purchase. Finally, unlike Snelling's fraud claims, discussed above, his

MMPA claims do not wholly rely on the statements by Christina. Thus, his MMPA claims do not suffer from the same causation issues that contributed to dismissal of the fraud claims.

As an alternative to dismissal on the merits, HSBC argues that the MMPA claim is untimely. This court has already rejected HSBC's argument that Missouri's statute of limitations bars Snelling's fraud and MMPA claims. *See* Order, Feb. 3, 2015, ECF No. 38. In brief: the timing of Snelling's first amended petition was held to relate back to his initial state-court filing, which occurred on December 3, 2012.[5] When evaluating the statute of limitations, Missouri starts the clock when the aggrieved party first realizes it will suffer damages. *See Polytech, Inc. v. Sedgwick James of Mo., Inc.*, 937 S.W.2d 309, 311–12 (Mo. Ct. App. 1996). Because Snelling alleged that he was harmed when HSBC refused to intervene with Kodak in December 2008 or January 2009, he was within the five-year statutes of limitations.[6] *See* Order, Feb. 3, 2015, ECF No. 38 at p. 16–17.

---

[5] Snelling voluntarily dismissed that action in March 2013 and refiled.

[6] Section 516.120 of the Revised Statues of Missouri provides a two-component limitations period for fraud, which requires that an action for fraud "is to be brought within fifteen years in any event," but "if the fraud be discovered or is discoverable prior to the lapse of ten years, then within five years after its discovery." *Graf v. Michaels*, 900 S.W.2d 659, 661 (Mo. Ct. App. 1995) (quoting *Anderson v. Dyer*, 456 S.W.2d 808, 812 (Mo. Ct. App. 1970) (alteration omitted). Snelling's MMPA claim is also subject to a five-year limitations period. *See Huffman v. Credit Union of Tex.*, 758 F.3d 963, 969 (8th Cir. 2014) (citing R.S. Mo. § 516.120(2)).

HSBC again raises the statute of limitations, this time arguing that Snelling's Second Amended Complaint raises new factual allegations that do not receive the benefit of the relation-back doctrine. These new facts include the February 3, 2009 assurance by Christina that "the charge would be taken care of" and HSBC's decision to cease assisting Snelling on March 2, 2009. 2d Am. Compl. ¶¶ 20–25, 43. HSBC argues that since more than five years passed between those events and the filing of the Second Amended Complaint, Snelling's MMPA claim must be dismissed.

Under Rule 15(c), an amendment relates back to the original pleading only if the claim asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Mandacina v. United States*, 328 F.3d 995, 1000 (8th Cir. 2003).

This case can be distinguished from *Popp Telecom, Inc.*, which HSBC believes governs. In that case, the Eighth Circuit found that the relation back doctrine did not save the plaintiffs' newly alleged RICO claim. *Popp Telecom, Inc. v. Am. Sharecom, Inc.*, 361 F.3d 482, 489–90 (8th Cir. 2004). In dicta, the

court noted that not only had the plaintiffs added an entirely new claim, but they also added over fifteen pages of new facts. *Id.* at 490 n.8.

Although the specific reference to Christina's statement is new, Snelling's substantive claims remain the same. He alleges that HSBC engaged in deceptive conduct by instituting the 100-mile policy without notifying the public in its advertisements and by only disclosing the policy on the back of its billing statements. Moreover, to the extent that Christina's statement is found in Snelling's letter to HSBC, it was referenced in the earlier pleadings. *See* 1st Am. Compl. ¶ 22, ECF No. 6 ("After several letters between the parties, the HSBC defendants notified plaintiff that it had declined to assist plaintiff with his dispute."). Because Christina's statement merely expands upon previously pleaded material, it still relates back. *See Brown v. Kerkhoff*, No. 4:05 CV 00274 JEG, 2005 WL 2671529, at *14 (S.D. Iowa Oct. 19, 2005) ("Claims amplifying or clarifying previously-pled material will still relate back.") (citing *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004); *Sivulich-Boddy v. Clearfield City*, 365 F. Supp. 2d 1174, 1182 (D. Utah 2005); *Kidwell v. Bd. of Cnty. Commr's of Shawnee Cnty.*, 40 F. Supp. 2d 1201, 1217 (D. Kan. 1998)).

### 3. *Breach of Contract*

Snelling alleges that he and HSBC were parties to a Visa credit card contract. Under the contract, Snelling would make purchases with his Visa card

and submit payments each billing period. 2d Am. Compl. ¶ 29. HSBC, in turn, owed the contractual duty to protect Snelling from fraud and to intervene on his behalf to resolve disputes related to fraudulent charges. *Id.* at ¶¶ 30. HSBC breached that duty by failing to intervene and reversing the charges attributable to the defective printer. *Id.* at ¶ 39. Snelling was harmed when HSBC made him pay the purchase cost of the printer and associated finance charges. *See id.* at ¶¶ 32, 34; *see also* ¶ 51 (noting finance charges).

HSBC argues that Snelling's complaint is insufficient because it alleges HSBC breached an unspecified obligation without identifying the obligation. "A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Missouri Military Academy*, 304 S.W.3d 98, 104 (Mo. banc 2010). "A party 'fails to state a claim for breach of contract [if] it does not set out [the claimant's] rights or [the defendant's] obligations under the contract.'" *Reitz v. Nationstar Mortg.*, LLC, 954 F. Supp. 2d 870, 884 (E.D. Mo. 2013) (quoting *Trotter's Corp. v. Ringleader Restaurants, Inc.*, 929 S.W.2d 935, 941 (Mo. Ct. App. 1996)). "Vague references to unspecified 'agreements' are insufficient to state a claim for breach of contract." *Id.* (citations omitted).

Construed in the light most favorable to Snelling, he has sufficiently stated a claim for breach of contract. Snelling has alleged that a contract exists between the parties and that he tendered performance by making purchases and payments. Snelling has pleaded the obligations that HSBC is alleged to have breached: the commitment to protect a cardholder from fraud by reversing charges and the duty to intervene on the cardholder's behalf in disputes with merchants. Although he has not set forth the explicit terms of the contract or attached the credit card agreement to his complaint, those failures are not dispositive of the contract claim at this stage in the proceedings. *See Nelson v. Wallen*, No. 4:13CV1715 CDP, 2014 WL 2739456, at *1 (E.D. Mo. June 17, 2014) (holding a plaintiff need only plead the legal effect of the contract) (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1235 (3d ed.)). Finally, by alleging that he was billed for the printer and associated finance charges, Snelling links his damages to HSBC's failure to perform. Snelling has stated a breach of contract claim.

HSBC argues that the breach of contract claim is time barred because Snelling was aware of any breach by March 2, 2009, but he did not assert the claim until his Second Amended Complaint, which was filed in March 2014. Contract claims must be brought within five years in Missouri. R.S. Mo. § 516.120(1).

As discussed above when addressing the application of Rule 41(b), Snelling's First Amended Petition alleged a breach of contract claim. Even assuming that no such claim then appeared, however, Snelling's breach of contract claim would also survive for reasons given when discussing the operation of the statute of limitations against his MMPA claim. The relation back doctrine is governed by the pleaded facts and not by the theory of recovery. *Maegdlin v. Int'l Ass'n of Machinists & Aerosp. Workers, Dist. 949*, 309 F.3d 1051, 1053 (8th Cir. 2002). The First Amended Petition gave adequate notice of the transaction giving rise to Snelling's breach of contract claim, and so that cause of action is deemed to have been filed at that time. As that pleading was filed January 17, 2014, it is well within the five-year statute of limitations for breach of contract claims.

## C. Failure to Serve HSBC Holdings, plc

The time has passed for service of HSBC Holdings, plc. That entity is a United Kingdom Corporation, and so service would necessitate compliance with international law. *See* Fed. R. Civ. P. 4(f). Snelling is an experienced *pro se* litigator, and it is not this Court's duty to guide him through the litigation process. As HSBC Holdings, plc has not been served within the time set by Fed.R.Civ.P.4(m), all claims against that entity will be dismissed without prejudice.

### III.  Conclusion

In sum, all claims against HSBC Holdings, plc, are dismissed without prejudice for failure to obtain service.  All claims against the Eastman Kodak Company remain stayed.  Two claims remain against HSBC Card Services, Inc.: Count II for breach of contract and Count III for violation of the Missouri Merchandising Practices Act.

This case will be set for a Rule 16 scheduling conference by separate order.

Accordingly,

**IT IS HEREBY ORDERED** that defendant HSBC Card Services, Inc.'s motion to dismiss [# 44] is **granted in part**.  Counts I and IV are dismissed with prejudice.  The motion is denied as to all other counts.

**IT IS FURTHER ORDERED** that all claims against HSBC Holdings, plc are dismissed without prejudice.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 9th day of June, 2015.